1

2

3

4

5

6

7       **IN THE UNITED STATES DISTRICT COURT FOR THE**

8       **EASTERN DISTRICT OF CALIFORNIA**

9

10      **ERICK J. HEAD**,                          1:14-cv-01165-AWI-MJS-HC

11                      Petitioner,              **ORDER DENYING PETITION FOR**
                                                 **WRIT OF HABEAS CORPUS AND**
12             v.                                **DECLINING TO ISSUE**
                                                 **CERTIFICATE OF APPEALABILITY**
13      **HEIDE M. LACKNER, Warden**,

14                      Respondent.
        _____/        (Doc. #1)
15

16          Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus

17      pursuant to 28 U.S.C. § 2254.  Respondent is represented by Amanda Cary of the Office of the

18      California Attorney General.

19                      **I.      PROCEDURAL BACKGROUND**

20          Petitioner is in the custody of the California Department of Corrections pursuant to the

21      December 8, 2011, judgment of the Superior Court of California, Tulare County. (Clerk's Tr. at

22      316-19).  A jury convicted Petitioner of three counts of second degree murder and four counts of

23      evading a peace officer.  Id.  Petitioner was sentenced to a prison term of 99 years to life.  Id.

24      Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District.  On

25      July 8, 2011, the appellate court reversed Petitioner's evading convictions due to insufficient

26      evidence, ordered that the previously stayed prison term enhancement be stricken, and in all

27

28
                                                      1

other respects affirmed the judgment. <u>People v. Head</u>, 2013 WL 3388633, at *3 (Cal. Ct. App. July 8, 2013).  Petitioner did not appeal the decision to the California Supreme Court.

On January 13, 2014, Petitioner filed a habeas petition in the Tulare County Superior Court alleging there was insufficient evidence to sustain his three murder convictions. (Lodged Doc. 9). On January 15, 2014, the superior court denied the petition. (Lodged Doc. 10).  On January 29, 2014, Petitioner filed a habeas petition in the state appellate court raising the same claim he brought in the superior court. (Lodged Doc. 11).  On April 21, 2014, the appellate court summarily denied the petition. (Lodged Doc. 12).  On April 29, 2014, Petitioner filed a habeas petition in the California Supreme Court, again alleging there was insufficient evidence to support his murder convictions. (Lodged Doc. 13).  On July 9, 2014, the California Supreme Court denied the petition. (Lodged Doc. 14).

Petitioner filed his federal habeas petition on July 25, 2014, alleging there is insufficient evidence to support his three murder convictions. (ECF No. 1).  On October 7, 2014, Respondent filed an answer to the petition. (ECF No. 15).  On December 11, 2014, Petitioner filed a traverse. (ECF No. 19).

## II.   STATEMENT OF THE FACTS[1]

*First Pursuit – March 30, 2011*

Officer Graciela Parras testified as follows regarding an incident on March 30, 2011. At approximately 1:30 p.m., Officer Parras was in a marked patrol unit equipped with "overhead lights." A white vehicle drove past her with no front license plate. Sometime later, Officer Parras identified defendant as the driver of the white vehicle out of a six-person lineup. Officer Parras made a U-turn and attempted to "catch up" to defendant. She eventually caught up with defendant at a stop light, pulling up directly behind him. Defendant tried to change lanes but could not. When the traffic signal turned green, Officer Parras activated her "overhead emergency lights and siren…" The vehicle did not stop or pull over, and eventually reached speeds of approximately 70 to 80 miles per hour. Officer Parras ultimately terminated the pursuit because she did not want to endanger the public.

*Second Pursuit – March 31, 2011*

---

[1] The Fifth District Court of Appeal's summary of the facts in its July 8, 2011 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

Tulare County Deputy Sheriff Scott Mackey testified to the following. Deputy Mackey was on duty at 9:45 p.m. on March 31, 2011. He was in full uniform driving a marked sheriff patrol vehicle with his K-9 partner, Rocket. Prior to starting his patrol he checked his "overhead lights" to ensure that they were functioning properly.

Deputy Mackey was driving northbound on Highway 99 when he observed a vehicle making a "sudden" lane change without signaling. Deputy Mackey sped up and observed a white SUV pulling a small utility trailer without working lights. The SUV did have functioning lights, but the utility trailer was blocking them. Deputy Mackey decided to make a traffic stop because the vehicle posed a hazard. Deputy Mackey activated his "overhead lights" to let the driver know he was being pulled over. The SUV did not immediately pull over. Rather, the SUV exited the freeway and "ran" multiple stop signs. Eventually both the SUV and Deputy Mackey reached speeds in excess of 90 miles per hour. As Deputy Mackey and the SUV approached a traffic light at the intersection of Caldwell and Akers, Deputy Mackey observed that the light was red for their direction of travel. Deputy Mackey slowed his vehicle to 30 to 40 miles per hour because of the vehicles and pedestrians in the area. Deputy Mackey's "lights" were still on at this point. The SUV did not slow down as it entered the intersection, and it collided with another vehicle.

Deputy Mackey approached the scene of the collision and observed a subject running from the suspect vehicle. Deputy Mackey gave chase and deployed his K-9 to pursue the subject. The subject surrendered and Deputy Mackey detained him. At trial, Deputy Mackey identified the subject as the defendant.

People v. Head, 2013 WL 3388633, at *1-2 (Cal. Ct. App. July 8, 2013).

## III.   GOVERNING LAW

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a).  Accordingly, the Court has jurisdiction over the action.

### B. Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statute recognizes . . . that even a general standard may be applied in an unreasonable manner." Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (9th Cir. 2009). Governing legal principles set forth by the Supreme Court at the time a state court renders its decision constitute "clearly established Federal law." Lockyer v. Andrade, 538 U.S. 63, 71-72

4

1    (2003).  A state court decision will involve an "unreasonable application of" federal law only if it

2    is "objectively unreasonable."  Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v.

3    Visciotti, 537 U.S. 19, 24-25 (2002).  In Harrington, the Court further stresses that "an

4    *unreasonable* application of federal law is different from an *incorrect* application of federal

5    law."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Williams, 529 U.S. at 410)

6    (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal

7    habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

8    decision."  Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Further, "[t]he more

9    general the rule, the more leeway courts have in reading outcomes in case-by-case

10   determinations."  Id.; Renico v. Lett, 559 U.S. 766, 776 (2010).  "It is not an unreasonable

11   application of clearly established Federal law for a state court to decline to apply a specific legal

12   rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S.

13   111, 122 (2009), quoted by Richter, 559 U.S. at 101.

14        2.   Review of State Decisions

15        "Where there has been one reasoned state judgment rejecting a federal claim, later

16   unexplained orders upholding that judgment or rejecting the claim rest on the same grounds."

17   See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through"

18   presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006).

19   Determining whether a state court's decision resulted from an unreasonable legal or factual

20   conclusion, "does not require that there be an opinion from the state court explaining the state

21   court's reasoning."  Richter, 559 U.S. at 100.  "Where a state court's decision is unaccompanied

22   by an explanation, the habeas petitioner's burden still must be met by showing there was no

23   reasonable basis for the state court to deny relief."  Id. at 98. ("This Court now holds and

24   reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be

25   deemed to have been 'adjudicated on the merits.'").

26        Richter instructs that whether the state court decision is reasoned and explained, or

27   merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the

28

same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 102.  Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id.  To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787.  It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

## IV.   REVIEW OF PETITION

### A.  Claim One – Insufficient Evidence

Petitioner claims there is insufficient evidence to support a finding of malice aforethought with regard to his three murder convictions.  (ECF No. 1, p. 19-22).  Petitioner claims implied malice was found based on the felony murder doctrine.  (ECF No. 1, p. 22, line 3-22).  According to Petitioner, reversal of his felony evasion convictions renders the evidence supporting his murder convictions insufficient.  (ECF No. 1, p. 19, line 20-26).  Petitioner argues that his Fourteenth Amendment Due Process rights have been violated because the element of

malice was not proved beyond a reasonable doubt.  (ECF No. 1, p. 4)[2].  Respondent argues

Petitioner's insufficient evidence claim is procedurally barred.  (EFC No. 15, p. 7).  In addition,

Respondent argues Petitioner's claim is meritless because the evidence is sufficient to support an

implied malice theory.  (ECF No. 15, p. 12).  In the interest of judicial efficiency, the Court will

not address Respondent's argument that Petitioner's claim is procedurally barred. Instead, the

Court will proceed to the merits of the claim.

*1.  State Court Decision*

Petitioner first presented this claim by filing a writ of habeas corpus in the Tulare County

Superior Court.  The superior court denied the claim in a reasoned decision.  Petitioner filed

subsequent petitions in the California Court of Appeal, Fifth Appellate District and the California

Supreme Court.  The appellate court and the Supreme Court summarily denied the petitions.

Because the appellate court's and California Supreme Court's opinions are summary in nature,

this Court "looks through" those decisions and presumes they adopted the reasoning of the

superior court, the last state court to have issued a reasoned opinion.  See Ylst v. Nunnemaker,

501 U.S. 797, 803-04 & n.3 (1991)(establishing, on habeas review, "look through" presumption

that higher court agrees with lower court's reasoning where former affirms latter without

discussion).  In denying Petitioner's claim, the superior court explained:

> Petitioner claims insufficient evidence to support his convictions.  A
> review of the case file and transcripts of both the trial and witness statements
> totally refute petitioner's claim.  There is more than enough evidence to support
> the jury's decision that petitioner was guilty of the charged offense.

(Lodged Doc. 10).

*2.  Legal Standard – Sufficiency of the Evidence*

The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may

be convicted only by proof beyond a reasonable doubt of every fact necessary to constitute the

---

[2] Petitioner also interjects claims that his Sixth Amendment Due Process rights were violated and that the sentence of 99 years to life constitutes cruel and unusual punishment in violation of the Eighth Amendment when setting forth his arguments that there was insufficient evidence to support his murder convictions. The Court will address Petitioner's cruel and unusual punishment claim separately below.

1  charged crime. <u>Jackson v. Virginia</u>, 443 U.S. 307, 315-16 (1979).  Under the <u>Jackson</u> standard,

2  "the relevant question is whether, after viewing the evidence in the light most favorable to the

3  prosecution, *any* rational trier of fact could have found the essential elements of the crime

4  beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319 (emphasis in original).

5      In applying the <u>Jackson</u> standard, the federal court must refer to the substantive elements of

6  the criminal offense as defined by state law. <u>Jackson</u>, 443 U.S. at 324 n.16.  A federal court

7  sitting in habeas review is "bound to accept a state court's interpretation of state law, except in

8  the highly unusual case in which the interpretation is clearly untenable and amounts to a

9  subterfuge to avoid federal review of a constitutional violation." <u>Butler v. Curry</u>, 528 F.3d 624,

10 642 (9th Cir. 2008) (quotation omitted).  "<u>Jackson</u> claims face a high bar in federal habeas

11 proceedings because they are subject to two layers of judicial deference." <u>Coleman v. Johnson</u>, -

12 --U.S.---- 132 S. Ct. 2060, 2062 (2012).  The first layer allows a reviewing court to set aside the

13 jury's decision based on insufficient evidence only if "no rational trier of fact could have agreed

14 with the jury." <u>Id.</u>  The second layer of judicial deference allows a federal court, on habeas

15 review, to overturn the state court decision based on insufficient evidence only if the state

16 decision was "objectively unreasonable." <u>Id.</u>

17      *3. Analysis*

18      Petitioner asserts there is insufficient evidence to support a finding of malice aforethought

19 since his evading convictions were reversed and therefore his murder convictions should be

20 reversed.  "Murder is the unlawful killing…of a human being with malice aforethought."  Cal.

21 Penal Code § 187(a) (West 2015).  "Malice is implied when a person willfully does an act, the

22 natural and probable consequences of which are dangerous to human life, and the person

23 knowingly acts with conscious disregard for the danger to life that the act poses." <u>People v.</u>

24 <u>Gonzalez</u>, 54 Cal. 4th 643, 653 (2012).  "Implied malice requires a defendant's awareness of

25 engaging in conduct that endangers the life of another – no more, and no less." <u>People v.</u>

26 <u>Knoller</u>, 41 Cal. 4th 139, 143 (2007).  A charge of second degree murder does not require that

27 there be an underlying felony. <u>People v. Watson</u>, 30 Cal. 3d 290, 299 (1981). The jury was

28

instructed that "the defendant acted with implied malice if: (1) he intentionally committed an act; (2) the natural and probable consequences of the act were dangerous to human life; (3) at the time he acted he knew his act was dangerous to human life; AND (4) he deliberately acted with conscious disregard for human life." (Clerk's Tr. at 256).

At trial, testimony established that Scott Mackey attempted to pull Petitioner over. (Rep. Tr. 88-98). Rather than pull over, Petitioner accelerated and ran through two stop signs. (Rep. Tr. at 99-103). Scott Mackey testified that Petitioner was driving at speeds exceeding 90 miles per hour. (Rep. Tr. at 110). Scott Mackey's siren was on but Petitioner did not pull over. (Rep. Tr. 105-06). Scott Mackey also testified that the SUV never slowed down when it entered the intersection. (Rep. Tr. at 112-113). Bobby Hebrard was the officer who was with Petitioner at the hospital after the accident. (Rep. Tr. at 150-52). Bobby Hebrard testified that he informed Petitioner that the accident resulted in the death of three people and Petitioner replied, "I'm fucked." Id. According to Hebrard, Petitioner did not appear to be remorseful. Id. Brent Miller, who interviewed Petitioner at the Visalia Police Department a few days after the accident, testified that Petitioner stated he had seen that the light was red. (Rep. Tr. at 244-245).

Petitioner has not shown the state superior court's determination that there was sufficient evidence to support the murder convictions was unreasonable. A reasonable juror could find that Petitioner's acts of attempting to evade the police, speeding, running stop signs, and running a red light constituted a willful act, "the natural and probable consequences of which are dangerous to human life." A reasonable juror could also conclude that Petitioner acted knowingly "with conscious disregard for the danger to life that the act poses" based on testimony that Petitioner saw the light was red, did not slow down, and did not appear remorseful after learning his actions resulted in the death of three people. In addition, reversal of Petitioner's evasion convictions does not render the evidence for his murder convictions insufficient.

On direct appeal, the California appellate court reversed Petitioner's evasion convictions. People v. Head, 2013 WL 3388633, at *2 (Cal. Ct. App. July 8, 2013). The court determined the evidence only established that the lights on the law enforcement vehicles were on. Id. The

1    evidence did not establish whether any of the lights were red.  Id.  Since felony evasion requires

2    a pursuing officer's vehicle to have at least one red lighted lamp, there was insufficient evidence

3    to support the evasion convictions.  Id.  The reversal of Petitioner's evasion convictions for

4    insufficient evidence does not affect the evidence supporting a finding of implied malice for his

5    murder convictions.  Based on the evidence presented above, including that petitioner was

6    attempting to evade the pursuit of a patrol vehicle, regardless of whether it was exhibiting a red

7    light, there was sufficient evidence for any reasonable juror to find that Petitioner had the

8    requisite intent required to support the murder convictions.

9        **B.  Claim Two – Eighth Amendment Violation**

10       Petitioner argues the prison sentence of 99 years to life constitutes cruel and unusual

11   punishment in violation of the Eighth Amendment.  (ECF No. 1, p. 20).  According to Petitioner,

12   the sentence violates his Eighth Amendment rights because it is meant to "torture him through

13   the States correctonal (*sic*) system" rather than rehabilitate him.  (ECF No. 1, p. 22).

14       *1.  State Court Decision*

15       Petitioner raised his Eighth Amendment claim in his habeas petitions to the state courts, but

16   the state courts did not address his claim.  As such, in determining whether the superior court

17   unreasonably applied clearly established federal law, this Court will consider what arguments or

18   theories could have supported the state court's decision.  See Harrington v. Richter, 562 U.S. 86,

19   102 (2011).

20       *2.  Legal Standard – Cruel and Unusual Punishment*

21       "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow

22   proportionality principle' that applies to noncapital sentences."  Ewing v. California, 538 U.S.

23   11, 20 (2003)(citing Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991)(Kennedy, J.,

24   concurring in part and concurring in judgment).  In Lockyer the Supreme Court held, "the only

25   relevant clearly established law amendable to the 'contrary to' or 'unreasonable application of'

26   framework is the gross disproportionality principle" which is "applicable only in the

27   'exceedingly rare' and 'extreme' case."  Lockyer v. Andrade, 538 U.S. 63, 73 (2003).  Only the

28

1   extraordinary case will result in a constitutional violation under the gross disproportionality

2   principle.  Id. at 77.  To the maximum extent possible, proportionality review by federal courts

3   should be informed by objective factors.  Harmelin, 501 U.S. at 1000.  Strict proportionality

4   between the crime and sentence is not required under the Eighth Amendment.  Id. at 1001.  The

5   Eight Amendment only prohibits "extreme sentences that are 'grossly disproportionate' to the

6   crime."  Id.  For a crime as violent and serious as "felony murder without specific intent to

7   kill…'no sentence of imprisonment would be disproportionate.' "  Id. at 1004 (citing Solem v.

8   Helm, 463 U.S. 277, 290, n. 15 (1983)).  Rarely will a reviewing court be required to engage in

9   extended analysis to determine whether a sentence is constitutionally disproportionate due to the

10  substantial deference that must be accorded legislatures and sentencing courts.  Solem, 463 U.S.

11  at 290 n. 16.

12      The defendant in Rummel was sentenced to life in prison under Texas's recidivist statute for

13  obtaining $120.75 by false pretenses.  Rummel v. Estelle, 445 U.S. 263, 276 (1980).  The

14  defendant had previously committed, and been imprisoned for, two other felonies.  Id.  The

15  Court held that the mandatory life sentence did not constitute cruel and unusual punishment.  Id.

16  at 285.  "Texas was entitled to place upon Rummel [the defendant] the onus of one who is

17  simply unable to bring his conduct within the social norms" since previously he had been

18  imprisoned for felonies.  Id. at 284.

19      In Ewing the defendant received a sentenced of 25 years to life for felony grand theft.  Ewing

20  v. California, 538 U.S. 11, 28 (2003).  The defendant's theft of three golf clubs was his third

21  strike under California's three strikes law.  Id.  The Court held that the sentence, although long,

22  was not grossly disproportionate and did not violate the Eighth Amendment.  Id. at 30.  In

23  reaching this conclusion the Court weighed the defendant's "long history of felony recidivism"

24  against the State's "public-safety interest."  Id. at 29-30.

25      In Ramirez the defendant stole a $199 VCR. Previously, the defendant had been convicted of

26  two nonviolent shoplifting offenses for which he served one six month sentence in county jail.

27  Ramirez v. Castro, 365 F.3d 755, 756 (9th Cir. 2004), as amended (Apr. 27, 2004).  As a result

28

of his prior convictions, the defendant was sentenced to 25 years to life.  Id.  The Ninth Circuit found that the sentence for the three shoplifting offenses was more "severe than the sentence he [defendant] would have faced had any one of his three crimes been murder, manslaughter, or rape."  Id.  Citing Supreme Court precedent, the Ninth Circuit concluded that this was "an 'exceedingly rare' case in which the sentence imposed is grossly disproportion…in violation of the Eighth Amendment."  Id. at 756-757(citing Lockyer v. Andrade, 538 U.S. 63, 77 (2003)).

   *2. Analysis*

   Here, Petitioner was convicted of three counts of second degree murder and sentenced to 99 years to life in prison.  (Clerk's Tr. at 316-19).  Petitioner had previously been convicted of a serious felony and served a prison term following a felony conviction. People v. Head, 2013 WL 3388633, at *2 (Cal. Ct. App. July 8, 2013).  Due to the gravity of Petitioner's felony convictions, a sentence of 99 years to life is not grossly disproportionate.  In Rummel the Court determined that a sentence of life in prison was not disproportionate to the crime of false pretenses in light of the fact that the defendant had committed two prior felonies.  Similarly, in Ewing a sentence of 25 years to life was not considered disproportionate to the crime of felony grand theft since it was the defendant's third strike.  Like the defendants in Rummel and Ewing, Petitioner has been convicted of a felony in the past.  Further, Petitioner's murder convictions are serious crimes; much more serious than the nonviolent shoplifting offenses in Ramirez.  Considering the Supreme Court's statement that no imprisonment sentence would be disproportionate to a crime of felony murder, the state courts could reasonably have determined that Petitioner's sentence is not disproportionate in violation of the Eighth Amendment.

   Since Petitioner's prison sentence is not disproportionate and does not constitute cruel and unusual punishment, it does not amount to "torture" through the State's correctional system.  "A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution or rehabilitation" and selecting the justification is a "policy choice made by state legislatures." Ewing, 538 U.S. at 25.  "The Constitution 'does not mandate adoption of one penological theory.' " Id. (quoting Harmelin, 501 U.S. at 999 (Kennedy, J., concurring in part and concurring

in judgment)).  Even if the justification for Petitioner's sentence is not rehabilitation, the theory or justification for a sentence does not render it cruel and unusual punishment under the Eighth Amendment.

## V.   CONCLUSION

Petitioner is not entitled to relief with regard to the claims presented in the instant petition. Therefore, the petition will be denied.

## VI.   CERTIFICATE OF APPEALABILITY

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)      (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
>> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

13

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that no reasonable jurist would find the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

## VII.   **ORDER**

Accordingly, IT IS HEREBY ORDERED:

    1)   The petition for writ of habeas corpus is DENIED;

    2)   The Clerk of Court is DIRECTED to enter judgment and close the case; and

    3)   The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   July 17, 2015                                       _____

                                   SENIOR  DISTRICT  JUDGE